## BLANCHARD, Executor *v.* LOCKETT.

Defendant purchased, with two other persons, certain ground for the purpose of dividing it
into lots and re-selling it, taking the title in his own name, and giving a counter-letter
binding himself to sell and account to his co-proprietors. One of the latter executed his
notes, which were endorsed by the defendant and discounted, and the proceeds applied on
account of the maker towards paying his portion of the price of the land. The defendant
was afterwards obliged as endorser to pay the notes. The maker having died, defendant
and his surviving co-proprietor agreed with the executors of the deceased that the whole
property should be sold by the register of wills, and at the sale defendant became the
purchaser. The executor having demanded from the purchaser the whole price of an
undivided third, alleging that purchasers at probate sales cannot compensate against the
price claims due them by the deceased, and that for his advances defendant was only an
ordinary creditor of the succession, which was insolvent: *Held,* that defendant had the right
to retain any advances made by him out of the proceeds of the property in his hands.
C. C. 2992.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J.
    *Le Gardeur,* for the appellant. *Goold* and *Micou,* for the defendant.
The judgment of the court was pronounced by

ROST, J.*  This case has already been before the Supreme Court, and was
remanded for the introduction of evidence, which the court below had refused
to admit. The facts are fully stated in the opinion of the court, in 4 Rob. 370.

The controversy grew out of a real estate speculation, entered into between
*John A. Merle, Theodore Nicolet,* and the defendant. The subject was a lot of
ground and improvements, and the price $30,000. The property was pur-
chased in the name of the defendant, who bound himself to divide it into lots,
effect sales thereof, and account to *Merle* and *Nicolet,* who took a counter-
letter which was deposited in the office of *Grima,* the notary before whom the
sale was passed. Pending the negociation, *Nicolet* informed the defendant
that *Jules Le Blanc* owned an interest in the property, which it was desirable
to extinguish. For the purpose of purchasing that interest, *Nicolet* made
notes for $10,000, which were endorsed by the defendant. Those notes were
discounted to the amount of $6,900, and the proceeds were paid to *Jules Le
Blanc* for account of *Nicolet.* The defendant was subsequently obliged, as
endorser, to pay those notes. *Nicolet* died, and in order to settle his rights in
this property, *Merle* and the defendant agreed with his executor that the re-
gister of wills should make sale of the whole. The defendant became the
purchaser at the price of $20,000. The executor now demands the whole
price of an undivided third, alleging that purchasers at probate sale cannot
compensate claims due them by the deceased, and that, for any advances the
defendant has made, he is an ordinary creditor of the succession, which is
shown to be insolvent. The judgment in the court below was in favor of the
defendant, and the plaintiff appealed.

---

* EUSTIS, C. J. did not sit on the trial of this case, having been engaged as counsel.

The legal title to the whole of the property was in the defendant, and he could not have been divested of it against his consent, without a decree of court on a proper showing. The counter-letter gave *Nicolet* nothing more than an equitable claim to one-third of the nett proceeds of the adventure, which it authorized the defendant to close. He could have transferred no more in his life-time, and nothing more passed to his legal representatives, at his death. *Lockett* had made advances under the mandate, and had the right to retain those advances out of the proceeds of the property in his hands. Civil Code, art. 2992. It is contended that, the share of *Nicolet* was no longer in his hands, after he consented that it should be sold by the register of wills with his own. Such is not the necessary consequence of his assent. Believing that, under the power he held, he could not sell the property himself, after the death of *Nicolet*, he agreed that it should all be sold at auction, as the only means of closing the adventure. It would be inequitable to consider this involuntary change in the execution of the mandate, as implying on his part an abandonment of vested rights. He might have retracted his assent at any time; the legal title was still in him on the public records of the country; and if, before the adjudication, a third person had purchased from him in good faith, that purchaser would not have been affected by the latent equities existing between his vendor and the succession of *Nicolet*. *Hyams* v. *Richardson*, 1 Annual Rep. 286.

There is no error in the judgment appealed from.

*Judgment affirmed.*